IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUSAN D. LILLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 13-1561-LPS |
| | ) | |
| CAROLYN COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Stephen A. Hampton, GRADY & HAMPTON, LLC, Dover, DE.

    Attorney for Plaintiff.


Charles M. Oberly, III, United States Attorney, and Heather Benderson, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Philadelphia, PA.

Nora Koch, Regional Chief Counsel, and M. Jared Littman, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, PA.

    Attorneys for Defendant.


## MEMORANDUM OPINION


March 23, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION[1]

Plaintiff Susan Lilly ("Lilly" or "Plaintiff") appeals from decisions of Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration ("the Commissioner" or "Defendant"), denying her claims for disability insurance benefits ("DIB" or "DIBs") under Title II, 42 U.S.C. §§ 401-433 ("Title II"), and Title XVI, 42 U.S.C. §§ 1381-1383 ("Title XVI"), of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Before the Court are cross-motions for summary judgment filed by Plaintiff and the Commissioner. (D.I. 25, 27)

Plaintiff seeks DIBs from February 15, 2006 through April 19, 2010, or, in the alternative, asks for remand and further proceedings before the Commissioner. (D.I. 26 at 13) The Commissioner requests that the Court affirm the decisions denying Plaintiff's application for benefits. (D.I. 28 at 2-3) For the reasons set forth below, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment.

## II. BACKGROUND

### A. Procedural History

"This case is before the Court following remand and consolidation of two separate claims." (D.I. 28 at 1) On April 11, 2006, Plaintiff filed a Title II and XVI application for supplemental social security income ("SSI"). (D.I. 12 at 437) After a hearing before an Administrative Law Judge ("ALJ") on April 17, 2008, Plaintiff was found to not be under a

---

[1] Unless otherwise indicated, all facts are taken from supporting briefs submitted by the parties and the case record.

disability within the meaning of the Social Security Act ("SSA") because her alleged conditions were not severe enough to prevent employment. Plaintiff filed a request for review of the hearing decision/order, which was denied.

When her request for review of her first application was denied by the Appeals Council, Plaintiff filed her first civil action ("*Lilly I*") in this Court on January 13, 2010. *See Lilly v. Astrue*, 2012 WL 748836 (D. Del. Mar. 1, 2012), adopting Report and Recommendation, 2012 WL 256634, at \*1 (D. Del. Jan 30, 2012) ("R&R 2012 WL256634"). The Court remanded *Lilly I* for reconsideration because the ALJ's findings: (1) failed to give proper weight to her treating physician's medical opinion; (2) did not adequately credit her testimony; and (3) were based on an incomplete Physical Residual Functional Capacity Assessment ("PRFC"). *See id.*

In the meantime, on December 11, 2008, Plaintiff filed a second application for SSI with the Commissioner. (D.I. 11 at 10) At a hearing on March 25. 2010, Plaintiff amended her alleged onset of disability to September 10, 2008. An ALJ again found that Plaintiff was not under a disability within the meaning of the Social Security Act through the date of the decision on April 19, 2010. (*Id.* at 23)

Then, on January 25, 2012, Plaintiff filed a second civil action ("*Lilly II*") in this Court, seeking review of the denial of her second application. (D.I. 28 at 1) By consent order, *Lilly II* was remanded back to the Commissioner. (*Id.*) Upon remand of *Lilly I* and *II*, the Commissioner consolidated her claims for a third proceeding. (*See* D.I. 26 at 1)

On remand in the consolidated appeal, an ALJ held a hearing on May 16, 2013. (*Id.*) On August 15, 2013, the ALJ again denied Plaintiff's claims. (*Id.*) Plaintiff then filed the instant action ("*Lilly III*"), for judicial review of the Commissioner's August 15, 2013 decision, which

2

found her to be not disabled within the meaning of the Social Security Act from February 15,

2006 through August 15, 2013. (*See* D.I. 11-12 ("Tr.") at 437)

### B.     Factual History

#### 1.     Plaintiff's April 17, 2008 Testimony[2]

Plaintiff first testified before an ALJ on April 17, 2008. (*See* Tr. at 636-55)  Her

testimony revealed that she is a high school graduate and once worked as a dental assistant. (*Id.*

at 636-37)  Plaintiff reported difficulty at least "two to three days a month" at work and would

miss "probably one" day a month due to her impairments. (*Id.* at 644)  She claimed an inability

to open jars, hold glasses, and lift milk, and believed she was unable to lift more than ten pounds.

(*Id.* at 648)  Plaintiff reported an ability to engage in only a minimal amount of physical activity.

(*See id.* at 649)

When questioned by the ALJ about her reason for not working in August 2005, Plaintiff

answered that it was because of "[p]ersonal problems with [her] stepchildren." (*Id.* 637)  She

later added that back pain, rheumatoid arthritis, carpal tunnel syndrome, and fibromyalgia kept

her from working. (*Id.* at 639-40, 645)  Plaintiff reaffirmed this second statement when

questioned by her attorney and indicated she could no longer perform the duties associated with

the job because she "would not be able to withstand having to lean over a chair," and her hands

would become numb. (*Id.* at 645)

Lilly testified that her level of back pain was equal to a seven or eight on a scale of one to

ten. (*Id.*)  Prescription medication only worked some of the time. (*Id.*)  She explained that she

---

[2]Plaintiff has testified at three administrative hearings before the Commissioner: on April
17, 2008; March 25, 2010; and May 16, 2013.

3

had a brace for her carpal tunnel syndrome, but did not have a back brace or use a crutch to improve her mobility. (*Id.*)

Plaintiff acknowledged she had issues with substance abuse. (*Id.* at 642) She reported smoking marijuana to cope with her depression, as it relaxed her. (*Id.*) She further conceded to the ALJ that doctors believed she was using marijuana regularly, as she had registered positive urine tests. (*Id.*) Moreover, Lilly reported being heavily medicated and had been prescribed "Lamictal, Trazodone, Wellbutrin, Excel, and Clonzaepam" and "Vicodin, Skelaxin, and Neurontin." (*Id.* at 646)

## 2.   Plaintiff's March 25, 2010 Testimony[3]

Plaintiff next testified before an ALJ on March 25, 2010, in support of her December 12, 2008 application for DIBs. (*Id.* at 494) She again stated that she stopped working in 2006, at least in part due to a need to be with her stepchildren. (*Id.* at 55) She further explained that she was having problems picking up small objects at the dentist's office without her hands cramping up, and that she was unable to work due to chronic pain from fibromyalgia and arthritis. (*Id.* 56-57) Lilly had had surgery on both shoulders and has carpal tunnel syndrome in her hands. (*Id.* 59-61) She reported an inability to stand for more than two hours in an eight-hour workday, sit for more than one hour at a time, or lift more than five pounds. (*Id.* at 69, 71) Moreover, Plaintiff claimed that she needed to lie down approximately three times a day for up to two hours at a time. (*Id.* at 75)

---

[3]With the advice of counsel, Plaintiff executed a form to amend the onset date of her disability to be September 10, 2008, the day after she received an unfavorable decision in her first appeal. (Tr. at 597)

4

### 3.    Plaintiff's May 16, 2013 Testimony

Lilly testified one last time before an ALJ in support of her consolidated appeal on May

16, 2013. Again, she reported joint swelling and stiffness, lack of improvement with her

shoulders following surgeries, and tingling and numbness in her hands. (*Id.* 475-76) She stated

that she had not had any further treatments. (*Id.* at 477) However, Lilly now had an ability to

button buttons, zipper zippers, and hold various small objects such as utensils, grooming items,

and ink pens. (*Id.* at 478)

Lilly added that she had had arthroscopic surgery on her right knee in May 2011, which

reduced swelling but failed to reduce pain. (*Id.* at 479) She used a cane most of the time due to

fear of losing her balance and falling. (*Id.* at 480) Finally, Plaintiff testified that she had gone to

the emergency room within one month prior to her testimony due to pain in her lumbar spine.

(*Id.* at 483-84)

### 4.    Dr. Tamesis

Plaintiff began treating with rheumatologist Eric R. Tamesis, M.D., of Tamesis

Rheumatology Medicine of Delaware, P.A. in 2006. (Tr. at 263) Plaintiff reported to Dr.

Tamesis multiple joint pains, including her left shoulder, hands, hips, lower back, and left knee.

(*Id.* at 263, 266, 267, 268, 270, 272) Dr. Tamesis's examination of Plaintiff's joints found

tenderness and pain in range of motion. (*Id.* at 264, 267, 268, 270, 272)

Throughout 2007 and 2008, Plaintiff continued to see Dr. Tamesis and received

Remicade infusions to treat arthritis. (*Id.* at 290, 292, 294, 296, 298, 300, 302. 304, 324, 326,

328, 330, 332, 334, 336) On April 30, 2007, Dr. Tamesis had Plaintiff undergo a lumbar spine

MRI, which revealed degenerative disc disease with small disc bulges. It was further learned that

5

Plaintiff was not suffering from any central or neuroforaminal stenosis. (*Id.* at 949) As a result, Dr. Tamesis counseled Plaintiff that she begin regular exercise. (*Id.* at 295, 297)

Lilly's reports of pain and stiffness continued in 2009. (*Id.* at 382, 384, 386. 388, 410, 412, 414, 416, 418, 420) Dr. Tamesis's examinations showed the same previously-reported tenderness and range of motion limits in her shoulders and carpal bones. (*Id.* at 382. 384, 386, 388, 410, 412, 414, 416, 418, 420) Treatment with Dr. Tamesis continued throughout 2010 and 2011.

Plaintiff continued to complain of shoulder pain, episodic low back pain, right hip pain, right knee pain, and right hand tingling and numbness. (*Id.* at 408, 422, 849) Dr. Tamesis's findings related to Plaintiff's tenderness and range of motion limitations in the shoulders and carpal bones remained the same, but the doctor did not find any type of hip pain with a showing of just mild knee crepitus. (*Id.* at 408, 422, 849, 850, 852, 854, 856, 858, 860, 862, 864, 866) In 2012 and 2013, Plaintiff's tender point count, according to Dr. Tamesis, ranged from 14 through 18 out of 18, but Plaintiff consistently exhibited normal motor functioning. (*Id.* at 868-69, 871, 874, 877, 880, 883-84, 886, 889, 892, 895)

On May 7, 2008, Dr. Tamesis completed an Arthritis RFC Questionnaire. In it, Dr. Tamesis stated that he met with Lilly every couple of months. He diagnosed her with psoratic arthritis and fibromyalgia. Dr. Tamesis further reported that Plaintiff had significant postural and manipulative limitations. (*Id.* at 309-10)

Dr. Tamesis reported that Plaintiff could sit for less than two hours and stand or walk for less than two hours in an eight-hour workday. (*Id.* at 305-08) He further noted that Plaintiff required ten to fifteen minute breaks roughly three to four times per work day. (*Id.*) In addition,

6

Plaintiff was limited to rarely lifting less than ten pounds and should never lift ten pounds or more. (*Id.* at 309) Dr. Tamesis further opined that Plaintiff would be absent from work about four days per month because of her impairments or treatment. (*Id.* at 310) On March 23, 2010, Dr. Tamesis completed another medical statement, reaffirming his May 7, 2008 opinion. (*Id.* at 425)

### 5. Substance Abuse

On March 19, 2013, Dr. Tamesis noted that Lilly tested positive for heroin and failed to go to physical therapy as ordered. (*Id.* 894) A laboratory report revealed that she had used heroin within one day of the February 27, 2013 urine collection. (*Id.* at 900) The laboratory report also revealed the use of benzodiazepine that was not prescribed and oxycodone that was not being taken as prescribed. (*Id.* at 900, 902) Another report demonstrated that Plaintiff had used cocaine within six days of a May 6, 2013 urine collection. (*Id.* at 906)

### 6. Dr. Moyer

On November 8, 2007, Plaintiff treated with Robert A. Moyer, M.D. Dr. Moyer found that Plaintiff had normal strength, tone, and reflexes. (*Id.* at 940) He further determined that she had a non-tender back, minimal trigger points, slightly decreased right-shoulder range of motion, and normal range of motion of all other joints. (*Id.*) Dr. Moyer did not observe any evidence of inflammation or joint damage. (*Id.* at 941)

### 7. Dr. Swaminathan

On November 30, 2007, Kartik Swaminathan, M.D., of the Delaware Back Pain and Sports Rehabilitation Centers, examined Plaintiff and determined that she had a functional range of motion, although with some shoulder and knee tenderness. (*Id.* at 920) Moreover, Dr.

7

Swaminathan found that Plaintiff's coordination and muscle strength remained normal, and she could duck walk" without difficulty. (*Id.* at 921, 928) Dr. Swaminathan also assessed Plaintiff's nerve conduction and had Plaintiff undergo an electromyography study. (*Id.* at 914) The results of the study confirmed that Plaintiff had carpal tunnel syndrome and mild left carpal tunnel syndrome, but found no evidence of cervical radiculopathy (spine or neck irritation). (*Id.*) Plaintiff had also tested positive for cannabinoids and opiates. (*Id.* at 944, 948)

### 8.  Dr. Manifold

On June 10, 2008, Stephen G. Manifold, M.D., performed arthroscopic left-shoulder surgery on Plaintiff following a March 14, 2008 left-shoulder MRI that had exhibited moderate degenerative changes of the acromioclavicular (AC) joint and a possible slap tear. (*Id.* at 390, 399) Then, a May 12, 2009 right-shoulder MRI showed moderate to severe osteoarthritis of the AC joint in Lilly's other shoulder. (*Id.* at 397-98) Thus, Dr. Manifold then conducted arthroscopic right-shoulder surgery on Plaintiff on November 3, 2009. (*Id.* 395) After the procedures, a January 18, 2010 examination by Dr. Manifold revealed that Plaintiff's shoulders had a full range of motion, full 5/5 strength, and mild tenderness. (*Id.* at 753-54)

Next, Plaintiff complained of right knee problems. Dr. Manifold again examined her, on May 2, 2011. Dr. Manifold found no signs of swelling, no tenderness, normal tendon reflexes, normal coordination, normal strength and tone, normal sensation, no instability, and normal functionality. (*Id.* at 756) However, due to Plaintiff's persistent self-reporting of consistent discomfort and pain, Dr. Manifold conducted arthroscopic surgery on May 24, 2011. (*Id.* 759)

### 9.  Other treatment

Plaintiff visited Delaware Medical Care from 2011 through 2013. Her subjective

8

complaints of back pain and rheumatoid arthritis remained the same, despite the fact that physicians found her range of motion, muscle strength, gait, and tone were overall within a range of normal. (*Id.* at 768-76) On February 5, 2013, Plaintiff went to the Bayhealth Emergency Center because of back pain, but a lumbar spinal MRI showed just mild degenerative changes and well-preserved vertebral body heights. (*Id.* at 780, 842)

## 10. Residual Functional Capacity (RFC) Assessments

On May 30, 2007, Ciriaco B. Bongalos, M.D., examined Plaintiff on referral from the state disability agency. Plaintiff had "numerous x-rays, MRIs, scans, evaluations in addition to lab tests," which "did not seem to show substantial compelling evidence to correlate with her numerous subjective symptoms and complaints." (*Id.* at 723) Plaintiff complained to Dr. Bongalos about chronic muscle spasms and pain "all over her muscles and joints." (*Id.* at 725-27, 735-38)

Dr. Bongalos's exam revealed a grossly normal spine, no joint inflammation, and full range of motion throughout, except for a slight reduction in Lilly's right shoulder and lumbar flexion/extension. (*Id.*) Plaintiff was fully ambulatory with intact manual dexterity, stance, gait, reflexes, and coordination. (*Id.* at 727) Dr. Bongalos concluded that there was "no compelling evidence clinically of acute inflammatory impairment." (*Id.*)

On March 4, 2009, state agency medical consultant Dr. M.H. Borek conducted a RFC assessment. Following a review of Plaintiff's medical records, Dr. Borek concluded that Plaintiff could occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds. (*Id.* at 339) Plaintiff could stand/walk at least two hours and sit about six hours in an eight-hour workday. (*Id.*) Plaintiff could never climb ladders/ropes/scaffolds, but could occasionally

9

climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (*Id.*)  Plaintiff was limited in

reaching, handling, and fingering, but was unlimited in feeling.  (*Id.* at 340)

On June 3, 2009, Anne C. Aldridge, M.D., affirmed Dr. Borek's assessment.  (Tr. 370)

### 11.    The ALJ's Findings

On August 15, 2013, the ALJ issued the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through February 28, 2010.

2.    The claimant has not engaged in substantial gainful activity since February 15, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3.    The claimant has the following severe impairments: obesity, right knee degenerative disc disease, right carpal tunnel syndrome, depression, bipolar disorder, substance abuse, fibromyalgia, and bilateral shoulder surgeries (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), and 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with infrequent pushing and pulling, handling and fingering with the right hand, no overhead work, and no exposure to cold, vibrations, or hazards.  The claimant is further limited to simple, unskilled work.

6.    The claimant is unable to perform any past relevant

work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on June 19, 1970 and was 35
       years old, which is defined as a younger individual
       age 18-44, on the alleged disability onset date (20
       CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education
       and is able to communicate English (20 CFR
       404.1564 and 416.964)

9.     Transferability of job skills is not material to the
       determination of disability because using the
       Medical-Vocational Rules as a framework supports
       a finding that the claimant is "not disabled,"
       whether or not the claimant has transferable job
       skills (See SSR 82-41 and 20 CFR Part 404,
       Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work
       experience, and residual functional capacity, there
       are jobs that exist in significant numbers in the
       national economy that the claimant can perform (20
       CFR 404.1569, 404.1569(a), 416.969, and
       416.969(a)).

11.    The claimant has not been under a disability, as
       defined in the Social Security Act, from February
       15, 2006, through the date of this decision (20 CFR
       404.1520(g) and 416.920(g).

(Tr. 437-51)

## III.   LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  In determining the appropriateness of summary judgment, the Court must

11

"review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted). If the Court is able to determine that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

## B. Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239

12

F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 239 F.3d at 1190-91.

## IV.    DISCUSSION

### A.    Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. *See* 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

13

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(l)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-23 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *Russo v. Astrue*, 421 F. App'x 184, 188 (3d Cir. 2011). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 CFR § 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to

14

perform her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (internal citation omitted). If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. § 416.920(a)(4)(v) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *Id.* In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [her] medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## B. Arguments on Appeal

Lilly contends that the ALJ (1) " failed to give proper weight to the medical opinion of Plaintiff's treating rheumatologist," Dr. Tamesis; (2) "gave improper weight to the non-examining consultants and to her own unsubstantiated opinions in creating an RFC;" and (3) "ignored key evidence when finding Plaintiff not credible." (D.I. 26 at 9-14) In addition, Lilly argues that the "RFC found by the ALJ is defective and the testimony of the VE is flawed."

15

(*Id.* at 14-15) The Commissioner responds that the ALJ's findings were supported by substantial evidence and that the decision to deny benefits should be affirmed. (*See* D.I. 28 at 10-20)

## 1. Treating Physician and Non-Examining Consultants

Treating physician opinions are assessed according to 20 C.F.R. §§ 404.1527, 416.927. Controlling weight is afforded to a treating physician opinion when it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c).

The Third Circuit subscribes to the "treating physician doctrine." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). In accordance with this doctrine, a treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the record." *Fargnoli*, 247 F.3d at 43. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).

It is not for this Court to reweigh the medical opinions in the record but rather to determine if there is substantial evidence to support the ALJ's weighing of those opinions. *See Monsour*, 806 F.2d at 1190. Where detailed regulations prescribe the process an ALJ must follow in determining the weight to give particular evidence, the Court can and should remand for further proceedings if it appears the ALJ failed to follow these procedures. *See generally Jopson v. Astrue*, 517 F. Supp. 2d 689, 702 (D. Del. 2007).

In determining disability eligibility, the ALJ must accord treating physicians' reports "great weight, especially when their opinions reflect expert judgment based on a continuing

16

observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at

429 (internal citation omitted). Thus, an ALJ may reject a treating physician's opinion "only on

the basis of contradictory medical evidence." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir.

2000). It follows that an ALJ cannot reject a treating physician's opinion "for no reason or for

the wrong reason." (*Id.* at 317) More specifically, the ALJ "cannot disregard the opinion of a

treating physician without referencing objective medical evidence conflicting with the treating

physician's opinion and explaining the reasoning for rejecting the opinions of the treating

physician." *Dass v. Barnhart*, 386 F.Supp.2d 568, 576 (D. Del. 2005). When an ALJ's decision

is to deny benefits, the notice of the determination must contain specific reasons for the weight

given to the treating source's medical opinion and support from substantial evidence in the case

record. *See* SSR 96-2P. The determination must make clear to any subsequent reviewers the

weight the adjudicator gave the treating source's medical opinion and the reasons for that weight.

(*Id.*)

"A decision not to give a treating physician's opinion controlling weight must not

automatically become a decision to give a treating physician's opinion no weight whatsoever."

*Gonzales v. Astrue*, 537 F.Supp.2d 644, 660 (D. Del. 2008). If a treating physician's opinion is

not given controlling weight, the ALJ should consider numerous factors in determining the

weight to give it, including: the length of treatment relationship, frequency of examination,

nature and extent of the treatment relationship, supportability of the opinion afforded by relevant

medical evidence, consistency of the opinion with the record as a whole, and specialization of the

treating physician. *See* 20 CFR § 416.1527(d)(3)-(5). However, it is important to note that "in

many cases, a treating source's medical opinion will be entitled to greatest weight and should be

17

adopted even if it does not meet the test for controlling weight." *See* SSR 96-2P.

As an initial matter, the ALJ made clear that Dr. Tamesis was Plaintiff's treating

physician and that Dr. Tamesis believed that Lilly suffered from disabling limitations. However,

the ALJ found that all of the other evidence, including the objective medical records, indicates

that Lilly was not disabled within the meaning of the statute. In evaluating Dr. Temesis's

opinion, the ALJ summarized the medical evidence, writing:

> [T]he undersigned does not give his opinion controlling weight, as
> it is not well supported by medical signs and laboratory findings
> and is inconsistent with the detailed, contemporaneous treatment
> records [and] with clinical and objective findings as summarized
> above. Moreover, Dr. Tamesis' opinion is given little weight, as it
> is not supported by the medical evidence or consistent with the
> record as a whole. In particular, the treatment records as
> summarized above document general improvement in the
> claimant's symptoms with medication. Physical examinations
> have revealed tender points, but no evidence of swelling and full
> range of motion in all joints except her right shoulder. The
> claimant has successfully recovered from her right knee and
> bilateral shoulder surgeries, with no evidence of complications or
> significant residual findings. The record shows no significant
> changes in the claimant's medication or dosage reflective of an
> uncontrolled condition.

(Tr. at 448; *see also id.* at 445-46) The ALJ added: "there have been no significant changes in

medications or dosages by Dr. Tamesis reflective of an uncontrolled condition." (*Id.* at 445)

The ALJ also referred to the results of the examination by consultative physician Dr.

Bongalos, which found: (1) no evidence of inflammation or joint deformity, (2) Plaintiff had a

full extremity range of motion, except for her right shoulder, and (3) a lack of effort in a right

shoulder strength examination. (*Id.* at 446, 725-27, 735-38) Dr. Bongalos essentially found that

Plaintiff's complaints did not correlate with the medical evidence before him. (*See id.* at 723)

18

This factored into the ALJ's determination of how much weight to give Dr. Tamesis's opinion.

In addressing the various medical records which appear to conflict with Dr. Tamesis's opinion, the ALJ also referenced the opinions of the state agency medical consultants. (Tr. at 449) Dr. Borek found that Plaintiff could occasionally lift at least ten pounds, that she could stand and walk at least two hours, and sit at least six hours. (*Id.* at 339) A second consultative physician, Anne C. Aldridge, M.D., agreed with Dr. Borek's assessment. (*Id.* at 370) The ALJ gave these assessments great weight because they were "consistent with the medical evidence and supported by the record as a whole." (*Id.* at 449)

The ALJ explained the weight being given to Dr. Tamesis's opinion, as well as other medical opinions in the record. The record included medical records and other materials that could be viewed as inconsistent with the treating physician's opinion. There was substantial evidence to support the ALJ's weighting decision. *See* 20 C.F.R. §§ 404.1527, 416.967; *see also Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) ("[T]he opinion of a treating physician does not bind the ALJ on the issue of functional capacity."). It was permissible for the ALJ to rely on "highly qualified . . . experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see also Chandler v. Comm'r of Soc.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[S]tate agency opinions merit significant consideration.").

Lilly faults the ALJ for relying on the state agency consultants' opinions because other medical records post-date their assessments. (D.I. 26 at 12-13) However, the Third Circuit has explained that "state agency review precedes ALJ review, [and] there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision

in reliance on it." *Chandler*, 667 F.3d at 361. It appears that the ALJ considered the records that followed the 2009 opinions. (*See* Tr. 449; *see also generally Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (ALJ need not specifically address every piece of evidence))

Lilly further criticizes the ALJ for not mentioning Dr. Swaminathan's evaluation of her. However, it appears from the record that Dr. Swaminathan examined Lilly only one to three times and his treatment notes are inconsistent with Dr. Tamesis's opinion, as they report a range of motion within functional limits, normal coordination and muscle strength, and pain of level 6 on a 10-point scale. (Tr. 914, 920-21, 926, 928) There is no reason to conclude that the ALJ overlooked Dr. Swaminathan's documentation, nor does the law require an ALJ to discuss every piece of evidence in her opinion. *See Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004).

In short, there is substantial evidence to support the weight the ALJ assigned to the opinion of Lilly's treating rheumatologist, Dr. Tamesis.

## 2. Credibility Determination

"Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez*, 537 F.Supp.2d at 657 (internal quotation marks omitted); *see also Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). An ALJ's credibility "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96–7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); *see also Schaudeck v. Commissioner of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir.1999).

Pursuant to 20 C.F.R. §§ 404.1529 and 416.929, the Commissioner must consider all "symptoms, including pain," in the disability determination. Statements of pain alone are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a); 416.929(a); SSR 96–7p. Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, then the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine how the pain limits the claimant's capacity for work. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96–7p.

In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining, and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p. In addition, the ALJ should account for the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints. *See* Social Security Ruling 96–7p. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. *See* 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the

21

claimant's testimony about her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129–30 (3d Cir. 2002).

With regard to a claimant's credibility, an ALJ must give great weight to the claimant's testimony "when this testimony is supported by competent medical evidence." *Schaudeck*, 181 F.3d at 433. The ALJ "has the right to reject their testimony entirely." *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence she rejects and the reasons for discrediting such evidence. *See Burnett*, 220 F.3d at 121. Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

Here, Plaintiff contends that the ALJ ignored key evidence when finding Plaintiff not to be entirely credible. The Court concludes, however, that the substantial evidence supports the ALJ's credibility assessment.

The ALJ found that Lilly's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not fully credible. (Tr. at 444) The ALJ discussed her reasoning, including by summarizing Plaintiff's characterizations of her pain and explaining that the treatment records document improvement in Plaintiff's joint pain (with medication). (*Id.* at 444-45) The ALJ further based her credibility assessment on the physicians' observations that Plaintiff was neurologically intact and did not demonstrate joint swelling. (*Id.*) Consistent with these objective records was the fact that Dr. Tamesis never made significant changes to Lilly's medicinal regiments. (*Id.*)

The record contains third-party statements – from Lilly's friends and family – supporting

22

Lilly's contention that her worsening pain caused her great difficulty with daily activities such as sitting, walking, and getting out of bed in the morning. (*See* Tr. 202-05) These assessments of lay witnesses do no more to undermine the objective medical evidence than does Lilly's own testimony. (*See* D.I. 28 at 17) (Commissioner arguing that these statements "duplicate Plaintiff's extreme allegations, which as the ALJ explained, were contradicted by the medical evidence") It was for the ALJ to weigh the credibility of Plaintiff in light of all of the evidence, including the statements made in her support, and there is no basis here for the Court to reassess Plaintiff's credibility. Substantial evidence supports the ALJ's credibility determination.

### 3. Plaintiff's RFC

Finally, Lilly challenges the ALJ's conclusion as to her RFC. Largely for the reasons given in rejecting her other appellate contentions above, the Court likewise finds substantial evidence in the record supports the ALJ's RFC assessment.

Despite how the ALJ weighed the various opinions in the record, and despite finding Lilly not to be entirely credible, the ALJ in her assessment of the RFC credited all of Plaintiff's limitations and gave weight to her subjective complaints of pain. In particular, the ALJ noted that Plaintiff suffered from fibromyalgia, right knee degenerative joint disease, and obesity and limited her to sedentary work. (Tr. at 446) The ALJ further accounted for Plaintiff's bilateral shoulder impairment and right carpel tunnel syndrome by limiting her to infrequent pushing and pulling, infrequent right-hand handling and fingering, no overhead work, and no exposure to cold or vibrations because they could exacerbate her symptoms. (*Id.* at 443) Finally, the ALJ accounted for Plaintiff's medication side effects and mental health impairments by limiting her to simple, unskilled work with no exposure to hazards. Again, substantial evidence supports the

23

ALJ's assessment of Lilly's RFC.

Substantial evidence also supports the ALJ's conclusion that Plaintiff's lumbar spine degenerative disc disease was not severe and, therefore, need not be accounted for in Lilly's RFC. (Tr. 441) An impairment is severe only if it significantly limits a person's ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a), (b). The evidence discussed by the ALJ – including a 2006 normal lumbar spine X-ray and MRI, 2007 findings by Dr. Bongalos, and X-ray and other medical records from 2013 – provide substantial evidence for the ALJ's conclusion.

## V.     CONCLUSION

For the reasons given above, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate Order follows.

24